[Civ. No. 3280.   Third Appellate District.—June 10, 1927.]

EMMA V. COLEMAN, Respondent, v. R. E. EDGAR et al.,
Appellants.

[1] VENDOR AND VENDEE—CONTRACT FOR SALE OF REAL·PROPERTY—
SALE PRICE—EVIDENCE—FINDINGS.—In this action to recover a balance due upon a contract of sale of real property, the evidence
was sufficient to support the trial court's finding that the land was
sold for a lump sum and not by the acre.

[2] ID. — BOUNDARIES — OVERLAPPING OF LAND — MUTUAL MISTAKE —
FINDINGS.—In such action, where the purchasers' attorney, after
examining the abstract of title, reported that the land was overlapped by property described in a certain deed, and such overlap
was known and discussed by the parties before the sale contract
was executed, the trial court's failure to find on the issues of
mutual mistake and the vendor's representations as to the boundary
of the land was not prejudicial error.

[3] APPEAL—FINDINGS—FAILURE TO MAKE—BURDEN OF PROOF—NON
PREJUDICIAL ERROR.—It is not prejudicial error to fail to find upon
an issue, the burden of sustaining which rests upon the appellant,
if the finding thereon must necessarily have been adverse to him.

[4] VENDOR AND VENDEE—MISTAKE OF FACT—KNOWLEDGE—REPRESEN
TATIONS.—Representations and mistakes of fact, made in the
beginning of negotiations for the sale of land, become immaterial
when, prior to the execution of the contract, the parties learn the
true facts.

[5] ID.—ERRONEOUS FINDING—SUPPORT OF JUDGMENT.—In an action
for the balance due on a contract for the purchase of land, although a finding that an allowance, or reduction of price, was
made by reason of the overlap by property described in a certain
deed to another, was erroneous, the reduction having been made
on account of the shortage in acreage, such finding was unnecessary to support the judgment for plaintiff.

[6] ID. — EVIDENCE — ABSENCE OF ERROR. — In such action, the trial
court did not err in sustaining plaintiff's objection to a question
put to one of the defendant's witnesses on direct examination as
to whether representations of plaintiff's agent as to the acreage
influenced him in signing the contract, where he previously testified that he would not have signed the contract to purchase less
than the represented acreage, and where the evidence conclusively
showed that he must have known, when he signed the contract, that

---

3.  See 24 **Cal. Jur.** 944.

the land did not all lie south of the river as represented by such agent.

[7] ID.—BOUNDARY OF LAND—DEFECTIVE DESCRIPTION—EVIDENCE.—In such action, that the boundary lines of the land were not accurately set forth in the contract, as shown by the testimony of a civil engineer that they did not close, was immaterial, where he further testified that such discrepancy meant nothing, because the survey must be balanced to return to the starting point.

(1) 39 Cyc., p. 1972, n. 22.    (2) 4 C. J., p. 1060, n. 12.    (4) 39 Cyc., p. 1249, n. 65, p. 1279, n. 40.    (5) 39 Cyc., p. 1978, n. 72.    (6) 4 C. J., p. 1004, n. 63, p. 1012, n. 22.    (7) 39 Cyc., p. 1227, n. 46.

APPEAL from a judgment of the Superior Court of Stanislaus County. J. C. Needham, Judge. Affirmed.

The facts are stated in the opinion of the court.

Dennett & Zion for Appellants.

Hawkins & Hawkins for Respondent.

FINCH, P. J.—The plaintiff was given judgment for the balance alleged to be due on a contract, by the terms of which she agreed to sell and the defendants agreed to buy a tract of land and some personal property for the sum of $44,850. This appeal is from the judgment. The land is described in the contract as follows:

"Beginning at the ¼ section corner between sections 17 and 20, Township 2 south, Range 10 east, Mount Diablo Base and Meridian, running thence south 80° west 1.44 chains, thence north 13¼° west 23.70 chains; thence south 87½° west 2.32 chains; thence north 12¾° west 56.60 chains to the Stanislaus River; thence north 65½° east 1.02 chains; thence north 46° east 10.04 chains; thence south 13¼° east 87.11 chains; thence south 89¾° west 6.04 chains to the point of beginning, containing 74.50 acres of land."

Prior to the execution of the contract the plaintiff furnished the defendants an abstract of title, which they submitted to their attorney for examination. His report to them contained the following: "On March 1, 1917, Arthur E. Leitch executed a deed to Ada Isabelle Patterson, . . .

83 Cal. App.—46

the description of which overlaps on this property described in the abstract. This places a cloud upon the title to this property, but to what extent I am unable to ascertain from the abstract.'' The description contained in the contract includes a part of the present channel of the Stanislaus River and about a half acre on the north side of the river, there being something over four acres in all lying north of the south bank of the river. The land described in the Leitch deed is bounded on the south by the middle of the river and overlaps that part of the plaintiff's land lying between the north boundary line thereof and the middle of the river. Plaintiff secured a quitclaim deed from Ada Isabelle Patterson for the overlapped part. The present controversy relates to the part of plaintiff's land which lies north of the south bank of the river. It is of little value, being mostly in the channel of the river and the small parcel north of the river being inaccessible from the south side. Defendants claim that they are entitled to a reduction in the purchase price of the land by reason of the worthless character of that lying in the river and that north thereof.

The answer alleges in substance that the plaintiff represented that all of her land lay south of the south bank of the river and that both parties so believed and were mutually mistaken in that regard, and that it was the intention of the parties that the defendants ''were to pay $590.60 per acre for said land.'' The court did not expressly find whether such alleged representations were made by the plaintiff or whether the parties were mutually mistaken as to the location of the land, but did find the following facts to be true:

''That the defendants offered to purchase the whole of the tract of land, . . . and the said contract price agreed was a lump sum, and the land was not sold by the acre. That said tract of land was sold as a whole and prior to the execution of said contract it was discovered that there was an overlapping boundary line on the north end of said tract of land, . . . and at that time an allowance was made by reason thereof, and a full, final and complete settlement as to the number of acres in said tract of land was had and determined prior to the execution of said contract.''

[1] Defendant R. E. Edgar conducted the negotiations for the purchase of the land on behalf of the defendants. In the beginning of such negotiations all parties apparently believed that the tract of land in dispute lay entirely south of the river and that it contained 75 acres. The evidence of both parties shows, without conflict, that it was discovered, prior to the execution of the contract, that the land did not all lie south of the river and that the tract contained only 74½ acres. The defendants then demanded a reduction of $300 in the purchase price on account of the shortage in acreage, being at the rate of $600 an acre. The plaintiff objected to any reduction, stating that she was selling the land as a whole and not by the acre. The parties finally compromised by reducing the price to $44,850. Relative to what was said at that time Edgar testified: "She (plaintiff) said her price was $45,000 and we said it was $600 an acre, so we compromised. . . . We split the difference. . . . We figured it was $600 an acre . . . and she says, 'No, it is $45,000.' . . . Q. In other words, you were claiming that you were paying $600 an acre for the land? A. Yes, paying $600. Q. And she was claiming that she was selling for $45,000? A. Yes." The plaintiff testified that she did not tell any of the defendants that she "would sell the land in question at so much per acre," but that she told them she would sell it for "$45,000, with the farming implements." The foregoing testimony amply supports the finding that the contract price "was a lump sum, and the land was not sold by the acre."

[2] The report of the defendants' attorney, after his examination of the abstract of title, disclosed the fact that the property described in the Leitch deed overlapped the north end of the plaintiff's land. The south boundary of such property is described in the deed as the "center of Stanislaus River." It necessarily follows that the plaintiff's land must have extended northerly beyond such center line, because otherwise there could have been no overlapping. This overlap was known and discussed by the parties before the contract was executed and they could not have believed, after such knowledge and discussion, that the plaintiff's land all lay south of the south bank of the river. The failure to find upon the issue of mutual mistake and the alleged representations of the plaintiff, therefore, is not

prejudicial error.  [3]  "It is not prejudicial error to fail to find upon an issue, the burden of sustaining which rests upon the appellant, if the finding thereon must necessarily have been adverse to him." (24 Cal. Jur. 944.) [4] Any representations made in the beginning of the negotiations and any mistake of fact then made by the parties became immaterial when, prior to the execution of the contract, they learned the true facts.  [5]  The finding that an allowance, or reduction of price, was made by reason of the overlap is erroneous, that reduction having been made on account of the shortage in acreage. That finding, however, is unnecessary to support the judgment.

[6] Appellants contend that the court erred in sustaining plaintiff's objection to the following question put to Mr. Edgar: "In signing the contract, did or did not the representations that Mr. Schell made and the abstract showing the acreage, showing it to be seventy-four and a fraction, influence you in signing the contract?" Schell was the plaintiff's agent in the sale of the land. Edgar had previously testified that in the beginning of the negotiations Schell had shown him the land south of the river only and stated that the tract contained 74½ acres. Immediately prior to the question to which objection was sustained, Edgar had testified as follows: "Q. Now, Mr. Edgar, would you have signed this contract had you known that there was any land across the river? A. I certainly would not. . . . I wouldn't have signed it.  Q. Would you have signed the contract and paid this purchase price for seventy-four and a fraction acres? A. No, I would not." It appears therefore, that the question referred to had already been substantially answered. Besides, as stated, the evidence conclusively shows that the witness must have known, at the time he signed the contract, that the land did not all lie south of the river.

[7] It is suggested that the boundary lines of the land are not accurately set forth in the contract. A witness for the defendants, who is a civil engineer, testified that such boundary lines do not close, but he further testified: "That discrepancy, as far as it is concerned, as far as I can see, with this acreage, doesn't mean anything one way or the other, because the survey must be balanced to come back to the place where it started."

No prejudicial error appears in the record and the findings of the court are fully supported by the evidence.

The judgment is affirmed.

Thompson, J., *pro tem.*, and Plummer, J., concurred.